UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAIME PLASCENCIA and CECELIA PLASCENCIA,<br>                  Plaintiff,<br>vs.<br>COLLINS ASSET GROUP, LLC and DANIEL N. GORDON PC d/b/a GORDON, AYLWORTH & TAMI, P.C.,<br>                  Defendants. | No. 2:17-cv-1505-MJP<br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF 15 USC §1692 AND RCW CHAPTERS 19.16 AND 19.86 ET SEQ.**<br><br>DEMAND FOR JURY TRIAL |

COME NOW Plaintiffs JAIME PLASCENCIA and CECELIA PLASCENCIA, by and through counsel and brings this action for damages brought by individual consumers for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), the Washington State Collections Agency Act, RCW 19.16, *et seq.*, which incorporates the Washington Consumer Protection Act, RCW 19.86, *et seq.*, against COLLINS ASSET GROUP, LLC and DANIEL N. GORDON PC d/b/a GORDON, AYLWORTH & TAMI, P.C.

/ / /

/ / /

# I. JURISDICTION AND VENUE

1. Plaintiffs allege violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. Additionally, Plaintiffs allege violations of the Washington State Collections Agency Act, RCW 19.16, *et seq.*, which incorporates the Washington Consumer Protection Act, RCW 19.86, *et seq*. This Court has original jurisdiction over Plaintiffs' FDCPA claims, and Plaintiffs' federal and state claims arise from the same offensive conduct.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question), and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants conduct affairs and transact business in this District, the unlawful acts giving rise to this complaint occurred in this District, and the Plaintiffs reside within the territorial jurisdiction of the court.

# II. PARTIES

4. Plaintiffs JAIME PLASCENCIA and CECELIA PLASCENCIA ("the PLASCENCIAS" or "Plaintiffs"), are natural persons residing in King County, Wash., from whom Defendants attempted to collect a delinquent consumer debt that they allegedly owed to Collins Asset Group, LLC ("CAG" or "Defendant").

5. Plaintiffs are "consumers" as defined by the FDCPA, 15. U.S.C. § 1692a(3).

6. Defendant CAG is a Washington state limited liability company that conducts business in Washington under UBI number 603-192-955, and its principal place of business is 609 Castle Ridge Rd., Ste 210, Austin, Tex. 78746.

7. Defendant CAG acts as a debt collector as defined by §1692a of the FDCPA, because they regularly use the mails and/or the telephone in their business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. CAG operates a nationwide delinquent debt collection business and attempts to collect

1  debts from consumers in virtually every state, including consumers in the state of Washington
2  via collection letters, phone calls, credit reports and lawsuits. In fact, Defendant CAG was
3  acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer
4  debt they have attempted to collect from Plaintiffs.

5        8.     Defendant CAG is a "collection agency" that regularly engages in soliciting
6  claims for collection or collecting or attempting to collect claims owed or due or asserted to
7  be owed or due another person as defined by RCW 19.16.100.

8        9.     Defendant CAG is licensed to collect debts in the state of Washington.

9        10.    Defendant Gordon, Aylworth & Tami, P.C. ("Gordon" or "Defendant") is a
10 Washington state law firm that operates as a professional corporation that conducts business
11 in Washington under UBI number 603-270-108, and its principal place of business is 4023 W
12 1st Ave, Eugene, Or. 97402.

13       11.    Defendant Daniel N. Gordon, PC d/b/a Gordon, Aylworth & Tami, P.C.
14 ("Gordon" or "Defendant") is an Oregon state law firm engaged in the business of collecting
15 debts that are originally owed or due, or asserted to be owed or due, to another. They are a
16 "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692(a)(6), because they regularly use
17 the mails and/or the telephone in their business, the principal purpose of which is to collect,
18 or attempt to collect, directly or indirectly, delinquent consumer debts. In fact, Defendant
19 Gordon was acting as a debt collector, as that term is defined in the FDCPA, as to the
20 delinquent consumer debt their attempts to collect from Plaintiffs.

21       12.    Defendant Gordon attempted to collect a "debt" from Plaintiff, as that term is
22 defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

23       13.    Defendant Gordon is a "collection agency" that regularly engages in soliciting
24 claims for collection or collecting or attempting to collect claims owed or due or asserted to
25 be owed or due another person as defined by RCW 19.16.100.

26       14.    Defendant Gordon is licensed to collect debts in the state of Washington as an
27 out of state collection agency.

15. Jurisdiction over Defendants is proper as Defendants are doing business in Washington state and all actions occurred in Washington.

### III.   FACTUAL ALLEGATIONS

16. On or about September 14, 2006, Jaime and Cecilia Plascencia purchased a home at 19665 Southeast 259th St, Covington, Wash. 98042 (the "Former Residence") using a no down payment "mortgage" comprised of two deeds of trust and two Notes. Mortgage Lenders Network USA, Inc. made two loans to the Plascencias: one for $191,318 ("First Note" or "First Deed of Trust") and a second for $47,829 with fixed monthly installment payments of $493.82 a month ("Second Note" or "Second Deed of Trust"). Both loans were secured by deeds of trust executed by the Plascencias in favor of Mortgage Lenders Network USA, Inc.

17. After the Plascencias defaulted on their First Note, US Bank National Association ("US Bank"), which owned the Plascencias' First Note as trustee for RASC 2007-EMX1, a subprime residential mortgage-backed security (RMBS), initiated a nonjudicial foreclosure sale by serving a Notice of Default dated April 7, 2010 and a Notice of Trustee's Sale recorded with the King County Recorder on May 12, 2010 under instrument no. 20100512000371. A copy of the Notice of Trustee's Sale is attached hereto as **Exhibit A.**

18. The non-judicial foreclosure was completed on August 13, 2010 at 10:00 AM through a public auction, at which US Bank, which held the first position deed of trust, purchased the property at the public auction for $143,750, satisfying the First Deed of Trust obligation in full.

19. A Trustee's Deed evidencing the foreclosure was recorded in the King County Recorder's Office under Instrument No. 20100826001243 on Aug. 26, 2010. A copy of the Trustee's Deed is attached hereto as **Exhibit B**.

20. When the Plascencia's Former Residence sold at auction, the amount fetched by the foreclosure sale was not sufficient to satisfy the lien secured by the First Note, so all junior secured deeds of trust on their Former Residence became unsecured promissory notes, including the September 14, 2006 promissory note at issue in this complaint.

21. The Plascencias made their last payment on the Second Note on or about October 3, 2009 and have not made a payment since then.

22. On April 1, 2010, GMAC charged off $45,963.88 owing on the Plascencias' Second Note.

23. At the time of the charge off, the First Deed of Trust and Second Deed of Trust were serviced by Homecomings Financial, a GMAC Mortgage, LLC company ("GMAC").

24. Since the Second Note charged off on April 1, 2010, the Plascencias have not received monthly statements regarding the Second Note on their Former residence.

25. Additionally, the filing of a Notice of Trustee's Sale on the First Deed of Trust on April 7, 2010 threatened the security for the loan for the Second Deed of Trust (which was in fact foreclosed a few months later).

26. By not taking immediate action to cure the arrears and reinstate the First Deed of Trust, the Plascencias repudiated their obligation to perform the terms of the Second Note, and transformed the obligation into an unsecured demand note upon completion of the non-judicial foreclosure on August 13, 2010 with no obligation to pay the monthly installment payments under the Second Note.

27. The Plascencias did not receive any contact from anyone regarding the Second Note until they received a letter from RCS Recovery Services, LLC on February 17, 2012 informing them that the Second Note was purchased from GMAC for collection, and demanding payment in the amount of $45,963.88, the same amount that GMAC charged off on April 1, 2010.

28. RCS Recovery Services, LLC purchased the Second Note for $298.77.

29. After another five years with no contact from any entity regarding this alleged obligation, on March 23, 2017, CAG's attorneys notified the Plascencias that Gordon had been retained to collect on a debt they allegedly owed to CAG. **Exhibit C**.

30. CAG acquired this debt from Newport Beach Holdings, LLC as part of a package of unsecured debt obligations on December 19, 2013.

31. The face value of the debt purchased was $42,240,927.68 and CAG paid $253,445.57. **Exhibit D**.

32. When CAG allegedly purchased this debt, it knew the debt was delinquent and that the debt was sold "as is" with no representations and warranties, express or implied.

33. Confused by the March 23, 2017 letter from CAG's attorneys alleging a debt owing to CAG, the Plascencias sent a letter requesting validation of the debt to Gordon via certified mail with return receipt.

34. By letter dated April 18, 2017, Gordon responded to the Plascencias' request for debt validation and the Plascencias learned for the first time that CAG and/or Gordon had sent other letters prior to March 2017 to their former residence, which they never received because they did not reside at that address after the 2010 foreclosure.

35. One of the letters addressed to the Plascencias' former residence included a letter from CAG dated July 21, 2015, notifying the Plascencias that CAG had allegedly purchased a promissory note dated September 14, 2006 between the Plascencias and Mortgage Lenders Network USA, Inc., in the original amount of $47,829.

36. The Notice also advised that CAG was "electing not to collect the accrued delinquent payments past due owing" and that the current principal balance owed on July 21, 2017 was $45,289.46.

37. CAG's July 21, 2015 letter informed the Plascencias: "However, if you fail to make a periodic principal payment by the applicable grace period due date, CAG retains the right to seek payment of future accrued interest on any unpaid principal, such accrual of interest commencing according to law at a per annum interest rate which is the lower of 1) the contractual rate of interest contained within the promissory note; or 2) any applicable general statutory rate of interest as allowed by law."

38. This letter from CAG did not include a street address at which CAG is licensed to do business.

39. The letter also failed to include information concerning the amount owing at the time it was received by CAG for collection or assignment and did not include any breakdown of collection costs, attorney's fees or other charges.

40. The July 21, 2015 letter failed to include the original account number and the date of the last payment.

41. Lastly, CAG invited the Plascencias to begin monthly payment of "principal only" starting Sept. 1, 2015, and in exchange, "[f]uture accrual and payment of contractual interest pursuant to the terms and conditions of the note is hereby waived if you recommence timely periodic monthly payments of principal" as well as late fees in accordance with terms detailed in the letter. A copy of that letter is attached hereto as **Exhibit E**.

42. The July 21, 2015 letter also proposed an amended amortization schedule with payments starting at $39.03 as of Sept. 1, 2015 and increasing on a monthly basis to $79.34 in August 1, 2021, even though no interest is accumulating on the loan but with a balloon payment of $41,114.90 due on October 1, 2021.

43. Another letter CAG allegedly sent on Sept. 22, 2015 to the Plascencias' former residence, at which they did not live at the time and from which they no longer received forwarded mail, was a Notice of Intent to Accelerate informing them that they had thirty days to cure a delinquency of $39.03 to avoid an acceleration on the loan. A copy of that letter is attached hereto as **Exhibit F**.

44. The September letter also requests a different amount owing than the July 21, 2015 letter, yet it failed to include an itemization of the loan including the amount owing when CAG received the debt for collection or assignment, including any breakdown of collection costs, attorney's fees or other charges.

45. The third letter CAG allegedly sent to the Plascencia's former residence on October 27, 2015, allegedly accelerated the loan and demanded the balance in full in the amount of $45,289.46. A copy of that letter is attached hereto as **Exhibit E**.

46. Thereafter, on June 6, 2017, CAG, through their attorneys Gordon, Aylworth & Tami, P.C., filed a Summons and Complaint in King County District Court at Burien against the Plascencias. See Collection Lawsuit attached as **Exhibit F**.

47. The Collection Lawsuit alleged that the Plascencias defaulted on a monthly installment note that began payments in November 2006.

48. The Collection Lawsuit included a request for an award of all expenses and costs of collection in its prayer for relief even though the Defendants failed to provide a street address and an itemization of collection costs and fees in their prior collection letters.

49. The Collection Lawsuit made numerous misrepresentations as follows:

   a. Stating that CAG would waive all accrued delinquent payments past due and owing if the Plascencias make periodic monthly payments of principal starting 9/1/2015 when there have been no payments owed since 2010;

   b. Stating that "[o]n September 22, 2015, Plaintiff sent a Notice of Intent to Accelerate and Right to Cure to Defendants informing them of their right to cure the default within thirty (30) days, with notice of acceleration if the default was left uncured" when the Plascencias had already repudiated the obligation and it transformed into an unsecured demand note upon completion of the non-judicial foreclosure on August 13, 2010 with no obligation to pay the monthly installment payments under the Second Note;

   c. Stating that "as a result" of Defendant's failure to cure the default, Plaintiff "accelerated all payments in accordance with the terms of the Note" when no monthly installment payments were due under the Second Note;

   d. Stating that "there remains due and owing on the Note $45,289.46, plus additional fees and costs incurred in bringing this action" which was different from the $45,963.88 amount that GMAC charged off on April 1, 2010, leaving the Plascencias confused as to whether this was a different debt;

  e. Stating without any personal knowledge that "Mortgage Lenders Network, USA, Inc. transferred the Note to EMAX Financial Corp, LLC who then transferred the Note to Residential Funding Company, LL, who then transferred the Note to U.S. Bank, National Association as Trustee, who then transferred the Note to Residential Funding Company, LLC, who then transferred the Note to RCS Recovery Services, LLC, who then transferred the Note to Newport Beach Holdings, LLC who then transferred the Note to Plaintiff on December 20, 2013."

  f. Stating that CAG was "the holder in due course of the Note" when they were not a "holder in due course."

  g. Failing to include information regarding the Plascencias' last payment on the Second Note was on October 3, 2009, including information that the Plascencia's Former Residence foreclosed in November 2010, rendering the Second Deed of Trust a nullity, which confused the Plascencias about the nature of the lawsuit.

50. The term "holder in due course" is defined in sources intended for laypersons as giving rights "superior to those provided by ordinary species of contracts" including "rights to payment [that] are not subject to set-off, and do not rely on the validity of the underlying contract giving rise to the debt (for example if a cheque was drawn for payment for goods delivered but defective, the drawer is still liable on the cheque)" and "[t]ransfer free of equities – the holder in due course can hold better title than the party he obtained it from…"[1]

51. In fact, CAG was not a holder in due course, because:

  a. It acquired the Second Note well after the instrument was overdue. RCW 62A.3-302(a)(2).

  b. CAG knew that the last payment made on the Second Note was made on October 3, 2009 and that the debt was charged off on April 1, 2010.

---

[1] *Holder in due course*, WIKIPEDIA, https://en.wikipedia.org/wiki/Holder_in_due_course (accessed October 10, 2018).

   c. CAG did not obtain sufficient information about the defaulted debts it purchased to conclude that it was a holder in due course.

52. The amount requested in the Collection Lawsuit did not include any collection costs or fees in addition to the $45,289.46. The lack of any such fees suggests that GAT and CAG are engaging in a fee sharing enterprise with fees paid based on some profit based scheme, suggesting that GAT is not merely acting as legal counsel, but instead is engaging in activities similar to that of a collection agency.

53. The Plascencias committed a total breach of any obligation on the Second Note by failing to preserve the security interest, their Former Residence secured by the Second Deed of Trust, from foreclosure was a total repudiation of the Second Note, causing the accrual of any breach of contract claim.

54. "Repudiation following partial breach by nonperformance is to be treated as a total breach and not as an anticipatory breach," meaning the right to sue cannot await continuing performance to toll the statute of limitations. *Colwell v. Eising*, 118 Wn.2d 861, 868–69, 869 n.4, 827 P.2d 1005 (1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 253 Reporter's Note (1981)).

55. Thus, CAG's attempt to waive all accrued delinquent past due payments owing as of July 21, 2015 in the Collection Lawsuit was a misrepresentation to the Plascencias because it did not change the time the statute of limitations began to run.

56. Since 2010, the Plascencias have resided in King County, Wash.

57. After 2011, the Plascencias did not receive any notices sent to their former residence in Covington, Wash., where they no longer lived.

58. The Collection Lawsuit was filed more than seven years after the Plascencias repudiated the Second Note and was time-barred when filed.

59. On information and belief, the Plascencias have incurred mailing costs and postage to obtain a misleading and incorrect information for a debt they do not owe. They

have also incurred financial uncertainty, unease, and distress caused by Defendants' tactics and communications, which are false, misleading, improper, and confusing.

## IV.  CAUSES OF ACTION

### A.  GENERAL ALLEGATIONS APPLICABLE TO ALL FDCPA CLAIMS

60. Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

61. Pursuant to the Fair Debt Collection Practices Act (FDCPA), a "consumer" or "debtor" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §1692a(3).

62. Pursuant to the FDCPA, the term "debt collector" means: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §1692a(6).

63. Claims arising under the FDCPA are evaluated using the "least sophisticated debtor" standard. *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

64. The discovery rule applies in FDCPA cases. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009).

### 1. Count 1

65. Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

66. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. This includes the false representation of the character, amount, or legal status of the debt (§ 1692e(2)); the threat to take any action which cannot be legally taken (§ 1692e(5)); or the use of any false representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

67. Under § 1692e(5), the prohibition on threats also encompasses *taking* actions that cannot legally be taken. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1246 (W.D. Wash. 2006).

68. Defendants used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt as assessed by the least sophisticated consumer standard in the following ways:

    a. Sending letters dated July 21, 2015 (Exhibit C), September 22, 2015 (Exhibit D), and October 27, 2015 (Exhibit E) claiming that the Plascencias owed periodic monthly installments for their Second Note based upon an unknown payment schedule that required payments from $39.03 to $80.13 a month and seemed to have no connection to the fixed monthly installment amount of $493.82 a month as stated in the Second Note;

    b. Stating that CAG would waive all accrued delinquent payments past due and owing if the Plascencias make periodic monthly payments of principal starting 9/1/2015.

    c. Stating incorrectly in letters that their claims and remedies were allowed by the terms and conditions of the Second Note when it had already been repudiated, time-barred, and not legally owed;

    d. Filing a lawsuit claiming that the debt from the Second Note was still legally owed after it had been repudiated and time-barred;

    e. Filing a lawsuit without stating the date of last payment when they had that information and knew the date of charge off;

    f. Filing a lawsuit that relied upon the acceleration of a schedule of periodic monthly payments that did not reflect the fixed monthly installment amount of $493.82 a month;

    g. Filing a lawsuit claiming that CAG was a holder in due course when it knew the Second Note was delinquent at the time that it was acquired;

        h.    Filing a lawsuit claiming personal knowledge of transfers of the Second Note when they had no such knowledge;

        i.    Filing a lawsuit that included a request for an award of all expenses and costs of collection in its prayer for relief even though the Defendants failed to provide a street address and an itemization of collection costs and fees in their prior collection letters as required by RCW 19.16.250(8);

69.    Therefore, Defendants violated 15 U.S.C. § 1692e, and/or its subsections, on numerous occasions.

**2.    Count 2**

70.    A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

71.    CAG had no right to charge interest on a charged off debt and its representation to the contrary in its July 21, 2015 letter constitutes and unfair or unconscionable means to collect or attempt to collect any debt.

72.    Plaintiffs repeat and reallege and incorporate by reference paragraph 68, as constituting unfair and unconscionable means to collect a debt.

73.    The Defendants therefore violated 15 U.S.C. § 1692f on multiple occasions.

**B.    GENERAL ALLEGATIONS APPLICABLE TO ALL CPA CLAIMS**

74.    With respect to the alleged debt, Plaintiff is a "debtor" as defined by RCW 19.16.100(7).

75.    With respect to the alleged debt, Defendants are collection agencies as defined by RCW 19.16.100(4).

76. Violations of RCW 19.16.250 are per se violations of the Consumer Protection Act ("CPA"), RCW chapter 19.86.[2] *See* RCW 19.16.440. RCW 19.86.090 provides for treble damages (to a limit of $25,000) and attorney's fees.

77. Violations of RCW 19.16.250 prevent CAG, Gordon or anyone else from collecting any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on such debt under RCW 19.16.450.

78. Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq* the below counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

79. Even minimal or nominal damages constitute "injury" under the CPA. *Panag*, 166 Wn.2d at 57. A plaintiff need not prove any monetary damages at all, as even "unquantifiable damages" suffice to establish "injury" for purposes of the CPA. *Id.* (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987)).

### 1. Count 3

80. If a written notice is the first notice (or seeks to collect a different amount than that indicated on the first notice), a collection agency must provide an itemization of the claim asserted, including: the date of the last payment to the creditor on the subject debt by the debtor. RCW 19.16.250(8)(e)(ii).

81. None of the collection letters state a date of last payment.

82. The date of last payment was known to CAG and GAT.

83. CAG and GAT therefore violated RCW 19.16.250(8)(e)(ii).

### 2. Count 4

84. A collection agency may not threaten to take an action against the debtor which the collection agency cannot legally take. RCW 19.16.250(16).

---

[2] *See Panag v. Farmers Inc. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) ("Consumer debt collection is a highly regulated field. When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA…")

85. Here, Defendants made numerous prohibited collection attempts, namely:

   a. Attempting to collect money not legally owed in a complaint.

   b. Attempting to collect an amount that that was different from the charge off amount in April 2010.

   c. Sending misleading letters claiming that prior delinquencies were owed and attempting to trick the Plascencias into resuming installment payments that were not owed on the alleged debt to restart the statute of limitations.

   d. A creditor's prohibition on threats also encompasses actually *taking* actions that cannot legally be taken.

86. Plaintiff realleges the misrepresentations listed in paragraph 68.

87. Defendants therefore violated RCW 19.16.250(16) on numerous occasions.

**3. Count 5**

88. A collection agency may not bring an action when the licensee knows, or reasonably should know, that such suit is barred by the applicable statute of limitations. RCW 19.16.250(23).

89. Defendant's Collection Lawsuit alleged that they were attempting to collect on a mortgage debt without mentioning that the real property was foreclosed in November 2010 after the Plaintiffs repudiated the debt and after failing to make payments since October 3, 2009.

90. Failure to prevent foreclosure of the First Deed of Trust transformed the obligation into an unsecured demand note upon completion of the non-judicial foreclosure on August 13, 2010.

91. Plaintiff also realleges the misrepresentations listed in paragraph 68.

92. Defendants therefore violated RCW 19.16.250(23) by bringing this lawsuit in violation of the statute of limitations.

**4. Count 6**

93. A collection agency may not send to any debtor any notice, letter, message, or form which represents or implies that a claim exists or threaten to take an action against the debtor without providing the following information:

    a. The name of the licensee and the city, street, and number at which he or she is licensed to do business;

    b. The amount owing on the original obligation at the time it was received by the collection agency for collection.

94. Therefore, Defendants violated RCW 19.216.250(8).

**5. Count 7 – Injunctive Relief**

95. A plaintiff may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

96. Plaintiffs do seek injunctive relief from this Court which would enjoin Defendants from collecting debts in the manner described above from both Plaintiff and any other persons similarly situated. *Scott v. Cingular Wireless*, 160 Wn.2d 843, 853 (2007).

97. Specifically, Plaintiffs seek an injunction prohibiting Defendants from engaging in unlawful collection tactics concerning the collection of unsecured second mortgage debt, including but not limited to demanding money that is not legally owed, claiming to collect on an installment agreement for different amounts than agreed to in the original promissory note, filing collection lawsuits on claims that are barred by the applicable statute of limitations, obtaining and pursuing void judgments, and making representations to the court without personal knowledge about the assignment of the debt.

98. Plaintiff have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

99. Injunctive relief is necessary to prevent further injury to Plaintiffs and to the Washington public as a whole.

100. Injunctive relief should therefore issue as described herein.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against all the Defendants for the following:

A. For judgment against Defendants for actual damages.

B. For statutory damages of $1,000.00 for FDCPA violations.

C. For treble damages, pursuant to RCW 19.86.090, calculated from the damages determined by the court.

D. For costs and reasonable attorney's fees as determined by the Court pursuant to 15 U.S.C. § 1692k(a)(3) and RCW 19.86 *et seq*.

E. For injunctive relief pursuant to RCW 19.86.090 as described above.

F. For injunctive relief pursuant to RCW 19.16.450 to prevent CAG, Gordon or anyone else from collecting any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor.

G. For costs and reasonable attorneys' fees and costs in an amount to be proven at trial pursuant to 15 U.S.C. §1692 et seq. and RCW 19.86 et seq.;

H. For interest on the above amounts as authorized by law;

I. For other relief as the Court deems just and equitable;

J. For leave to amend this complaint as needed and as required; and

K. The Plaintiffs also request a jury trial.

Respectfully submitted this 10th day of December 2018.

HENRY & DEGRAAFF, PS

*/s/ Christina L Henry*
Christina L. Henry, WSBA #31273
150 Nickerson St, Ste 311
Seattle, Washington  98109
chenry@hdm-legal.com
Tel 206-330-0595/ Fax 206-400-7609

BARRAZA LAW, PLLC

 /s/ V. Omar Barraza
V. Omar Barraza, WSBA# 43589
14245-F Ambaum Blvd, SW
Burien, WA 98166
omar@barrazalaw.com
Tel# 206-933-7861 / Fax# 206-933-7863