|   |   |   |
|---|---|---|
| | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| JAIME PLASCENCIA and CECELIA PLASCENCIA,<br><br>                     Plaintiffs,<br><br>          v.<br><br>COLLINS ASSET GROUP, LLC and DANIEL N. GORDON, P.C. d/b/a GORDON, AYLWORTH & TAMI, P.C.,<br><br>                     Defendants. | | CASE NO. C17-1505-MJP<br><br>ORDER GRANTING MOTION TO COMPEL DOCUMENTS PRODUCED *IN CAMERA* |

THIS MATTER comes before the Court on Defendants Collins Asset Group, LLC ("CAG") and Gordon, Aylworth & Tami, P.C. ("GAT")'s *in camera* submission. Having reviewed the submission and the earlier briefing on Plaintiffs' Motion to Compel (Dkt. Nos. 81, 84, 87, 91), the Court ORDERS as follows:

**Background**

Many of the facts relevant to this discovery dispute are set forth in detail in the Court's Order Granting Plaintiffs' Motion to Compel (Dkt. No. 93), and the Court will not repeat them here. The remaining relevant facts are as follows:

In 2013, CAG acquired the Plaintiffs' debt as part of a package of unsecured debt obligations. (Dkt. No. 71 at ¶ 30, Ex. D.) On March 23, 2017, GAT notified Plaintiffs that it had been retained to collect a debt allegedly owed by them to CAG. (Id. at ¶ 29, Ex. C.) On June 6, 2017, after Plaintiffs disputed the debt, GAT filed suit against them in King County District Court. (Id. at ¶ 46, Ex. F.) On October 6, 2017, Plaintiffs filed this federal suit alleging that CAG and GAT made false, deceptive, and misleading representations in their attempts to collect a debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Washington State Collections Agency Act, RCW 19.16 et seq., and the Washington Consumer Protection Act, RCW 19.86 et seq. (See Dkt. No. 1.) In relevant part, these claims allege that GAT is a "law firm engaged in the business of collecting debts that are originally owed or due, or asserted to be owed or due, to another," and is therefore a "debt collector" as defined in 15 U.S.C. § 1692(a)(6) and a "collection agency" as defined by RCW 19.16.100. (Dkt. No. 71 at ¶¶ 10-14.)

On February 22, 2019, the Court ordered CAG and GAT to submit for *in camera* inspection all responsive documents over which they claim either attorney client privilege, work product protection, or both. (Dkt. No. 93.) In particular, the Court noted that "[m]aterials concerning the relationship between CAG and GAT, including materials indicating whether CAG directed GAT to file suit against Plaintiffs and what information GAT had at the time it did so, are highly relevant" to Plaintiffs' claim that GAT acted as a "debt collector." (Id.)

1  On March 1, 2019, CAG and GAT separately submitted the requested documents to the Court. Within their submissions, CAG and GAT segregated responsive documents generated before October 6, 2017 (i.e., the date on which the federal suit was filed) from those generated after. Both Defendants request that, if the Court is inclined to review the post-filing documents, it appoint a special discovery master to do so. (See Dkt. No. 94, Exs. A, B.) Accordingly, at this stage, the Court has reviewed only the pre-filing documents.

**Discussion**

**I.  Legal Standard**

The attorney-client privilege protects confidential communications between attorney and client, made for the purpose of obtaining legal advice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." U.S. v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996). However, "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies only when legal advice is sought from a professional legal adviser *in his capacity as such*." Id. (internal quotation marks and citation omitted; emphasis in original.)

The work product protection shields from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . .)." Fed. R. Civ. P. 26(b)(3). The Ninth Circuit has explained that "a document should be deemed prepared in anticipation of litigation and thus eligible for work product protection . . . if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained

because of the prospect of litigation." In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2004). If a document would have been created in substantially similar form in the normal course of business, the fact that litigation is pending will not protect it from discovery. Id.

In all cases, the party asserting attorney-client privilege or work product protection bears the burden of establishing its applicability. See Fed. R. Civ. P. 26(c); Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). While the attorney-client privilege "cannot be overcome by a showing of need," such a showing "may justify discovery of an attorney's work product." Admiral Ins. Co. v. U.S. Dist. Ct., 881 F.2d 1486, 1494-95 (9th Cir. 1989) (citation omitted).

**II.    *In Camera* Inspection**

**A. CAG's Submission**

CAG submitted the following documents and communications for the Court's inspection:

**1. Attorney Network Services Contract (COLLINS000153-000174)**

This document sets forth the September 2014 retainer agreement between CAG and GAT "for the purpose of initiating and managing litigation relating to the collection of delinquent receivables owed by various debtors to CAG." The agreement provides that CAG may place accounts with GAT for "collection litigation services," and sets forth terms regarding compensation, data security, indemnification, conflict resolution, etc. While CAG indicates that it produced a redacted version of this document to Plaintiffs, it is not clear which portions were redacted. Additionally, while CAG's privilege log indicates that the document was redacted due to concerns about "privacy" and "proprietary" content, it does not explain why a "Confidential" designation under the existing protective order would not be sufficient to alleviate these concerns. (See Dkt. No. 31.)

1    CAG is ORDERED to produce an unredacted version of COLLINS000153-000174;

2    provided, the document may be designated "Confidential."

### 2. Placement and Fee Acknowledgements (COLLINS000175-000204)

These documents acknowledge CAG's placement of various accounts with GAT between 2014-2018. Each identifies the third-party debt issuer, the sum of the account balances, the commission schedule, and the date of placement. Apparently, CAG has produced versions of these agreements in which *all* of this information is redacted. (See Dkt. No. 89, Ex. 2.) While redactions to protect third-party privacy may be warranted (e.g., the name of the debt issuer), CAG does not explain how the account balances and commission schedules are privileged or otherwise not subject to disclosure. In general, retainer agreements are not privileged unless they reveal confidential communications between attorney and client. See, e.g., In re Osterhoudt, 722 F.3d 591, 592-93 (9th Cir. 1983) ("[T]he identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege. . . . Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client . . ."); Clarke v. Am. Commerce Nat. Bank, 974 F.2d 127, 130 (9th Cir. 1992) (same); see also Gray v. Suttell & Assocs. P.S., 2011 WL 13090761, at *4 (E.D. Wash. Mar. 4, 2011) ("The attorney-client privilege does not apply because there is no evidence that [client's] agreements with [law firm] to collect debts on behalf of [client] contain confidential communications made while seeking legal advice. Nor is there any indication that those documents reveal [law firm's] strategy for litigation.") (citations omitted).

CAG is ORDERED to produce unredacted versions of COLLINS000175-000204; provided, the names of third-party debt issuers may remain redacted.

### 3. Policies and Procedures (COLLINS000205-000319)

These documents set forth procedures for processing and logging certain events related to CAG's debt collection efforts. While most of the documents relate to CAG's internal document management systems and appear to be non-responsive (e.g., step-by-step instructions on opening and closing files; maintaining data with respect to outsourced files; processing vendor remittances, etc.), the following documents specifically address the relationship between CAG and the firms to which it outsources its debt collection efforts, and are therefore responsive to Plaintiffs' Request for Production No. 17: (i) the "Agency/Law Firm Audit Policy and Procedure" (COLLINS000288-000299), which sets forth CAG's auditing procedures for the law firms it retains to assist in debt collection efforts; and (ii) the "Outsource Network Welcome Kit" (COLLINS000304-000319), which explains that "[o]ne of [CAG's] recovery strategies is outsourcing accounts to collection Agencies or Law Firms" and provides high-level instructions for law firms in their collection efforts. While CAG indicates that the policies and procedures "were developed in coordination with CAG's in-house counsel in anticipation of litigation," it appears that both were prepared "in the normal course of business" not "*because of* the prospect of litigation." See In re Grand Jury Subpoena, 357 F.3d at 907 (emphasis added). Further, neither document even remotely contains or requests legal advice or reveals litigation strategy.

CAG is ORDERED to produce unredacted versions of COLLINS000288-000299 and COLLINS000304-000319; provided, the documents may be designated "Confidential."

### 4. Pre-Litigation Communications with GAT (COLLINS000320-000414)

These documents are a series of emails of between CAG and GAT, dated between April 14 and April 19, 2017. In these emails, CAG does not seek, and GAT does not provide, any legal advice, nor do the emails reveal any litigation strategy whatsoever. Instead, the emails

merely confirm GAT's receipt of a dispute letter from Plaintiffs, its submission of validation documents to Plaintiffs; and its intent to "continue collections." The emails attach non-privileged, non-confidential documents which purport to evidence the existence of the debt (e.g., a copy of the promissory note and allonges, deed of trust, acceleration notice, etc.), and which were previously transmitted to Plaintiffs.[1] Communications that do not contain confidential information and only reveal the relationship between the parties, the purpose for which a law firm has been engaged, and the steps which the law firm intends to take in discharging its obligation to the client are not protected by the attorney-client privilege. Further, despite the fact that GAT is a law firm, these emails relate solely to its work as a debt collector in the underlying collections matter. Therefore, the Court finds that the attorney-client privilege and work product protection do not apply. See, e.g., Burke v. Messerli & Kramer, P.A., 2010 WL 2520615, at *3-4 (D. Minn. June 15, 2010) (explaining that "[w]here the attorney acts as a . . . collection agent . . . the communications between him and his client are not protected by the privilege."); Torres v. Toback, Bernstein & Reiss LLP, 278 F.R.D. 321, 323 (E.D.N.Y. 2012) (holding that privilege did not apply to "letter[s] from [law firm] to [client] seeking information about the debt they were apparently hired to collect" where "the purpose of the communications is not for [client] to obtain legal advice from [law firm], but for [law firm] to obtain information related to their debt collection business."); Avoletta v. Danforth, 2012 WL 3113151, at *1-2 (D. Conn. July 31, 2012) (holding that documents related to the "underlying collection matter" were not privileged because "the privilege does not immunize from disclosure the facts communicated where those facts can be learned from some source other than the privileged communication.").

---

[1] Notably, as it did in its demand letter to Plaintiffs (Dkt. No. 71, Ex. 3), GAT includes the following disclosure in each of its emails to CAG: "This Communication is from a debt collector."

CAG is ORDERED to produce unredacted versions of COLLINS000320-000414.

**B. GAT's Submission:**

GAT submitted the following documents and communications for the Court's inspection:

### 1. History Report (GAT-Plascencia 213-231)

This document is a copy of GAT's internal log reflecting its efforts to collect the underlying debt. The document, which appears to be automatically generated, reveals that: GAT received Plaintiffs' file from CAG on February 16, 2017; made several attempts to contact Plaintiffs via phone and mail between February 17 and April 4, 2017; received Plaintiffs' request for validation on April 13, 2017; investigated the request between April 14 and April 18, 2017; sent Plaintiffs validation documents on April 19, 2017; reviewed the viability of a collections suit (i.e., confirmed whether Plaintiffs were deceased, in bankruptcy, or in active duty military status) and initiated suit on May 23, 2017; and filed the summons and complaint and served the Plaintiffs in June and July 2017. While several of the log entries note the dates on which "attorney review" was scheduled or completed (see, e.g., GAT-Plascencia 224, 228, 230), they do not reveal any substantive information that could conceivably be considered work product.[2] The fact that GAT's lawyers reviewed the Plaintiff's file before initiating litigation is hardly remarkable, let alone privileged.

GAT is ORDERED to produce GAT-Plascencia 213-231.

### 2. Standard Operating Procedures (GAT-Plascencia 260-352)

This document is titled "Firm SOP" and sets forth GAT's standards of conduct and standard operating procedures. The document addresses a variety of business and administrative

---

[2] The "History Report" also includes copies of the same emails submitted in COLLINS000320-000414. For the reasons discussed, *supra*, these emails are not protected by the attorney-client privilege.

matters and demonstrates that—except for those instances where GAT initiates suit against a debtor—its primary role is that of a debt collector.  For example, the SOPs indicate that all employees must take and pass the FDCPA exam bi-annually (GAT-Plascencia 274); that outgoing calls are monitored for violation of the FDCPA (GAT-Plascencia 277); that employees tell consumers "[t]his is an attempt to collect a debt, by a debt collector, and any information obtained will be used for that purpose" at the beginning of every collection call (GAT-Plascencia 294); etc.  Although some of the SOPs do pertain to legal services, they do so at a high level of generality.  For example, they require that the firm comply with the applicable statute of limitations (GAT-Plascencia 284), that suits be filed in accordance with state and federal law (GAT-Plascencia 288), and that legal documents be reviewed by an attorney (GAT-Plascencia 340-341.)  GAT does not list the SOPs in its revised privilege log, nor make any attempt to explain how these common-sense requirements reveal confidential or privileged information.  See, e.g., Hallmark v. Cohen & Slamowitz, 300 F.R.D. 110, 114 (W.D.N.Y. 2014) (finding that collections agency's firm manual was not privileged, notwithstanding the fact that some sections pertained to legal services, where they stated "general and obvious conditions relevant to [law firm]'s future decision to sue on particular accounts," such as the "applicable statute of limitations" and "potential collectability of any judgment").

GAT is ORDERED to produce GAT-Plascencia 260-352; provided, the documents may be designated "Confidential."

### 3.  History Report – Duplicate (GAT-Plascencia 353-388)

This document appears to be a duplicate of GAT-Plascencia 213-231 discussed, *supra*. To the extent that it is substantively identical, it need not be separately produced.

**Conclusion**

For the reasons discussed herein, the Court ORDERS as follows:

(1) With the redactions and confidentiality designations described above, CAG is ORDERED to turn over copies of the following documents to Plaintiffs: COLLINS000153-000174, COLLINS000175-000204, COLLINS000288-000299, COLLINS000304-000319, and COLLINS000320-000414;

(2) With the confidentiality designations described above, GAT is ORDERED to turn over copies of the following documents to Plaintiffs: GAT-Plascencia 213-231 and GAT-Plascencia 260-352;

(3) Defendats shall comply within seven (7) days of the date of this Order;

The clerk is ordered to provide copies of this order to all counsel.

Dated March 13, 2019.

Marsha J. Pechman
United States District Judge